Mr. O'Donnell, good afternoon. Good afternoon, Your Honor. Michael O'Donnell from Plaintiff Ethos Technologies with me is my colleague and co-counsel Michael Atteo. Your Honor, we are here because we strongly believe that Ethos did not receive a fair trial in the court of criminal law. We've read the brief, so you can take it from there. What can you clarify or add to what you argued at such length in the brief? First of all, the order of trial, does Your Honor have any questions about that? We believe it's an extraordinary procedure. We believe it's judicial legislation. I never quite understood the point you were making about that. The point is that the judge has a lot of leeway in how he runs a trial. Under Federal Rule 6211, he does. He does have a lot of leeway. There's nothing that prohibits him from doing it this way. But it's not an amount of discretion. But what is the real harm? The real harm is this. The patentee, the patent is issued with a statutory presumption of liability, section 282. We believe that this order of trial is adopted for the purpose of mutating that statutory presumption. Well, if we accept your interpretation of evil motive, that might make this case different. But for the purpose of argument, for the moment at least, assume we are not going to accept the idea of evil purpose by an experienced trial judge. Then what is your answer to Judge Mayer's question? What harm to your client from this particular sequence of issues as they were tried? Your Honor, I don't accuse Judge Young, who is a very respected, very experienced, and extremely hardworking judge. I don't accuse him of being personally evil or anything like that. It doesn't matter. We've put that aside for the moment. The question is, what harm? And I don't hear an answer to Judge Mayer's question of, how was your client harmed? Your Honor, I believe that the effect that resulted in the neutering of the statutory presumption of validity, there were five days. Well, wait a minute. Wait a minute. The jury was instructed, as I recall, about the presumption of validity. And the jury was told 10 times, according to the opposing side's brief, that the burden of proof was on the challenger. So if the jury was instructed about the presumption of validity and cautioned 10 times as to who had the burden of proof, then how are you prejudiced? Unless we're to assume that the jury violated the instruction of the judges and ignored the 10-time reminder about who has the burden of proof. Your Honor, Judge Young started out. First of all, he did not mention the statutory presumption of validity. He came close. He came very close. He said, patents starts are valid. But then he hammered away. The first phase of this trial is going to be, are these patents valid? He said that not once, but several times. He did not say that there is a statutory presumption of validity. I don't find it in the record, and the colleagues have not found it in the record either. Again, it is not a question of me having personal knowledge. Wait a minute. Are you saying the jury wasn't correctly instructed? Did you object to the instruction? Did you proffer an instruction that the judge refused to give? No, Your Honor. Then we have to take it that the jury instructions were correct. We're talking about the opening instructions, Your Honor. Well, we're talking about the whole thing from beginning to end. That's right, and I'm focusing on the opening instructions right now. And from the outset, the jury was told that the patent office can get it wrong. That's a straight point. That the first thing we're going to do, jury, is to see if these patents are valid. We're going to test if those patents are valid. He did not add that there was a statutory presumption of validity that they are. It is not a single specific thing, but all throughout the trial, there was this climate that really was antithetical to patents. I don't believe there was an evil personal motive. I believe there was a judicial motive. I think he was concerned that the plaintiff here, the appellants, were going to get too much money, and he wanted to hold those damages down. And I think he put his hand and the thumbs on the scales of justice and pushed a little too hard. You're going to have an awfully hard time with at least one judge on this panel. You're going to ask us to conclude that the judge put his thumb on the scale of justice. I just don't see any basis of saying that. That just seems like an extreme statement to make and no basis to rest it on. It's a strong statement, Your Honor, and it's a statement made by an attorney who has appeared before Judge Young and who very much respects him, but who I think understands he is trying to level the playing field. He stated that right at the outset. You asked Judge Michel's early question that you didn't request any. You didn't object. You didn't request any instruction to the jury to make clear about this that you're complaining about now. That's absolutely correct. Then why is it even in the brief? I mean, you know the law. The law is if you don't object or you don't ask for the instruction, then you've waived it. I understand, Your Honor, that this is a really fundamental question, and I think it goes to a clear error. I think it's a clear error under any circumstances in the gross abuse of discretion to conduct an order of trial in such a manner as to neuter the statutory presumption of validity. If I am wrong in that... Well, I'm not talking about the order of trial. We're talking about that you didn't ask him to talk about the statutory presumption, and you're complaining about that here now. Your Honor, I think it's a clear error. This court can correct a clear error at any time. It's a clear error. Well, it couldn't have been too clear because you didn't, even you didn't think to ask for a correction when you had the opportunity to get it corrected. Your Honor, at trial you're listening to these statements. You're taking down as much as you can. There's this fire hose pouring information, and you're collecting it as much as you can. You have to make your decision. Are you going to jump in now? Is the judge going to say something later? All these things are factors that you have to take in your mind, but ultimately there is the salvation. If there is something that is a clear error, it can be rectified in the appellate court, and that's what we're asking you to do. I think this is a dangerous, dangerous experiment, and it is an experiment. Now, did you agree to it? Excuse me? Did you agree to the process? No, we did not. Did you object to the sequence? I expressly object, Your Honor. Why isn't it waived, just as Judge Mayer said, with regard to the jury instruction? If you don't object at some timely point, you waive the right to complain about it later. You have not asked us what was going to be the order of trial, Judge. You haven't told us what was going to be the order of trial. It doesn't make any difference. When a judge orders something, you're allowed to object to it no matter how the judge phrases it. Your Honor, it would have been futile. It would have been futile because it would have preserved it for appeal. Well, Your Honor, if the objection would have been futile, it's preserved for appeal without formal objection, in my understanding. If it would have been futile. If you disagree that it would have been futile, then it may not be preserved. We'll never know. We'll never know since you didn't try. Well, I think we can, Your Honor, and I'll tell you why. Because he has adopted this procedure in at least four cases subsequently. And, in fact, I went before Judge Young about a month or two after his trial. Well, we're talking about this case. I don't think we need to get into the record of other cases that are not before us. Well, Your Honor, it does go to the issue of futility. Is it in the record, what you're about to say? No. Well, I don't think we need to hear it, do we? All right. Well, we can't. But, Mr. O'Donnell, there's a statement in the red brief which states that the argument ignores the trifurcation-enabled ethos to present its inventor and expert twice to the jury, which may explain why ethos consented. Did you consent or did you not consent? Is that statement wrong in the red brief? I'll say it again. Could you read that once again? On page 16 of the red brief. Yes. It says this argument ignores, talking about pledgers,  which may explain why ethos consented. No. Did you consent or did you not consent? No, Your Honor. That is talking about- Did you consent or did you not consent? It's a very simple question. No, Your Honor. You did not consent. I did not. And let me explain- So the statement in the red brief is wrong. Yes. And let me explain why. What that is talking about is the trifurcation of the trial, not the phasing of the trial. That's something different. The phasing of the trial says the defendant shall start first in validity. The trifurcation says there shall be three phases, but it doesn't tell you which phase goes first. And so they are talking about a totally different issue. Is your bottom position that the burden of proof was shifted to you as the patentee to prove that your patent was not invalid? I think that's exactly the law, Your Honor. And now if that's what you're saying the jury was led to believe, how does that square with the fact that the challenger was required to go first and put on evidence? Your Honor, the challenger went first because Judge Young mandated that they go first. Yes, but that would be logical with the thought that they bear the burden of proving invalidity. That's why they would be asked to go first. But you're trying to make it sound like when they were asked to go first, somehow that put the burden on us. That doesn't make any sense to me. He who goes first is he who has the burden. They opened the entire trial room. They opened the entire trial room. For five days, the patentee sat there to do nothing at most except cross-examination to try to explain what this patent is all about, the background out of which it arose, the need for the patent, all these circumstances. That would have been put in, and the defendant would have been allowed to go first on the issue of infringement. The court could still structure the trial. We can still trifurcate the trial. And we've never objected to the trifurcation of the trial. Never. We have no objections to it. It was a phasing. The judge could have, and I'm not quite sure why he didn't, but again, a discretionary call, but he could have ended the trial as to all those claims that were found invalid right after the first phase. He had no obligation to go further. That's correct. And it seems to me that this might be a good way to run these trials. If they're found invalid, then you don't spend another week or two going into the infringement. We're bound up here. We're stuck with having to review both of them when they come here if the judge is allowed to decide both of them. So it seems to me like, again, in this case he, for his own reason, went forward and let the jury decide all the rest of it as well. But if he had chosen not to, you would have had the very same situation. I don't see how you could object to it. The same result could have been achieved by it had the court started with a normal way of allowing the plaintiff to present on its case a non-infringement. So you're really saying that you're entitled, under the statute, to go first and to have infringement be the first issue the jury hears about. Entitled to that. I think, Your Honor, that at the very, yes. I think ultimately what it comes down to is this. That's one option. The other is to have infringement and validity both be tried non-segmented and tried together. In which case, again, the plaintiff would present on its case on validity. The defendant would go forward. I'm not saying on infringement. The defendant would go forward on invalidity. And then the plaintiff would rebut on validity. Mr. O'Donnell, are there local patent rules in Boston in the Massachusetts District Court? There are no local patent rules. None that address this issue, Your Honor. And I'm not sure there are local patent rules there. They certainly do not address this issue. There are patent rules in California, Delaware, et cetera. But none that address the rule of trial. Do you wish to reserve some rebuttal time? Yes, I reserve three minutes, Your Honor. We've used half of it. So that's why I'm reminding you. I'm sorry. Any other questions, Your Honor? Thank you. Mr. Verhoeven. May I please the court? Charles Verhoeven on behalf of the defendants. Let me start. I feel compelled to address the statement made by Mr. O'Donnell that there was no consent to this procedure that we've been discussing just now. The pretrial conference of this case was held off the record. There was no transcript of it. I was present at the pretrial conference. And here's what happened. Judge Young presented his idea of how to structure the case. And he said as follows to me, Mr. Verhoeven, here's how I would like to, I'm thinking of segmenting this case. I'm going to try validity first, then infringement and willfulness, and then damages. Now look, you're going to put us in an impossible position. You're talking about a conversation for which we have no transcript. And you're saying, in essence, you remember consent being given. Mr. O'Donnell has already, again, unsworn, testified, so to speak, from the podium that he never did consent. How can we possibly decide whose recollection or version of this unrecorded conversation is correct? We're not a trial court. We're not finders of fact. We don't have a record. And we have no way of knowing whose recollection is accurate. You cannot. Well, then it seems to me it's not a proper argument, because it's not an argument we're allowed to do anything with. Understood, Your Honor. Just for the record, we dispute that statement. And it doesn't matter, as the court has recognized, because there is no objection in the record at any point in time for the jury verdict to the way the trial was conducted. OK, but then he says plain error is still reviewable on appeal in the absence of objections that are otherwise required. So he invites us to find plain error in this circumstance where the challenger was allowed to consume the first five days of trial attacking the patent when the suit brought by the plaintiff patentee was his lawsuit where he thought he was going to get a chance from the beginning of the trial to prove infringement. The law does not support overturning the well-established doctrine that you have to object in order to preserve an objection. No, no, no. The plain error rule, unless I'm gravely mistaken, says an appellate court can reverse even in the absence of an objection if it rises to the very high requirement of plain error. Now, you can argue it doesn't rise that high. But you can't argue, I don't believe, that since there was no objection, the issue is foreclosed. I agree, Your Honor, and certainly in this case, a decision made by the judge about segmenting a trial is not a situation that rises to that level under Federal Rule of Civil Procedure 42B. It expressly states that trial judges have wide discretion in complex patent cases. It's very routine for courts to segment cases, to try them. Sometimes judges will try validity first with a separate trial and a separate jury. That's not responsive to his argument. His argument essentially is this one and only jury was prejudiced against my client because for the first five days when I should have been explaining the invention and the infringement claims, instead the jury heard nothing but an attack on the validity of the patent. So this doesn't involve two juries. Those are other circumstances. What's the answer on the circumstance here? We have the burden of proof, Your Honor. Well, we know that. The first issue is the issue that we have the burden of proof. There's a reason why, for example, on appeal, the appellant goes first. You're not responding to his point. His point was the jury was unduly prejudiced by hearing five days of attack on the patent before he even had a chance to present his case in chief on the only complaint before the court, which was a complaint for infringement of his patent. Well, first of all, there were other claims. I believe there were declaratory belief claims that we have asserted. And second, there were opening statements. He was permitted to make his case to the jury in opening statement. If you take the logic of his prejudice argument, then the person who goes second is always going to be prejudiced. If simply the fact of going first means that you're unduly prejudiced, then you could complain any time you had to go second. But somebody has to go first. Well, normally the party bringing the lawsuit and bearing the burden of proof of liability goes first. That's the norm, right? Normally in patent cases, the plaintiff goes first. I would say that. But when you segment trials up, then there is not so much of a normally there. Well, he doesn't complain about the bifurcation. He's been very clear on that. He repeated it several times. He says it's not the fact that it was bifurcated. The thing he complains about is that the validity issue and the attack on the patent was allowed to go first. That's all he's complaining about, not the segmentation. I understand. But it's hard to answer the question, Your Honor, when you realize that the first issue here was validity in which the defendants are the ones making the claim. It's the defendants' counterclaim for declaratory relief or validity and defendants that have the clear and convincing burden. And so the judge decided that the defendants should go first on that issue. And then on infringement, the defendants did not go first. The plaintiff went first. And the plaintiff had the burden. And by the way, the judge explained very clearly to the jury at each segment at the start of the case and at the end of the invalidity phase and distinguished the burdens of proof very clearly to the jury repeatedly with no objections. And the jury, if you look at this, he doesn't argue that the burdens were misdescribed by the judge. He's arguing that the effect of five days of attacks on the patent at the outset of his infringement case biased the jury and made it unfair to him. That has nothing to do with burden of proof. Well, to take that argument, then every trial would be unfair. Because in every case, somebody goes first. And there's a cross-examination. And then they rest. And then the other side goes. So why would it be unfair to the plaintiff, when we have the burden, to go second and not unfair to the defendants? Well, his argument, obviously, is I'm the plaintiff. I brought the lawsuit. The lawsuit charges liability for infringement. I should be able to put on my case of liability for infringement first. Invalidity of the asserted patents is an affirmative defense, something that the defendant can then bring forward if he cares to. But it should be after the infringement case. That's the essence of what he seems to be saying, at least as I perceive it. Right. But I don't understand that you're giving us a very precise response to that. Well, I don't see any prejudice, frankly, Your Honor. In any case, I've tried many cases. You go second sometimes. You go first sometimes. It's the same with briefing briefs. It's the claim that's simply inherent in who goes first and who goes second is unfairness. I don't think our court system recognizes that as a prejudice or as an unfairness. Certainly not something that rises to it. His point's a little bit different. He said this trial started out with an affirmative defense being put on by the defendant, as opposed to the norm, and he would say his entitlement, that the infringement trial should start with proof of infringement by the patentee. Well, to say it's the norm is there's no precedent. There's no case law. There's no local rule that says that this is the case. What you have, if you look at the law, is Rule 42, which says a trial judge can segment the trial and can try different issues. Invalidity is a prerequisite to any finding of infringement. Non-invalidity. I think I said non-invalidity. Non-invalidity is what I think you mean. Right, exactly. Validity is a prerequisite to any finding of infringement. And here, I don't know what was in the judge's mind, because there wasn't a dispute about this, frankly. And so if there was a dispute, maybe we would have more of a record as to what the judge was thinking. But there wasn't a dispute, and there wasn't an objection. This is the kind of situation that the waiver doctrine is there for. Here we have a panel of jurors who devoted themselves, really, for five weeks out of their lives to hear this case. And they deliberated for two and a half days, very carefully working their way through the special verdict form. This jury was exceptional. They actually went out and wrote the basis for their findings, beneath the boxes they checked. And throughout that process, Your Honors, throughout that process, there was no objection to the way this trial was set up. There was no objection to the segmentation. And now, after having lost, we don't know the reasons why there was no objection. There may have been tactical reasons. They may have wanted to put their expert on twice. There may have been a number of reasons. We don't know. Mr. Vorham, what happens in a situation where there's a presumption? Here we have a presumption of validity. Would it be proper, every time there's a presumption to be overcome, that that party who has the burden of overcoming that presumption goes first? It would be appropriate for a trial court to segment a trial, especially if it's a complex trial and complex issues, in such a way that the parties who have the burden, the parties who are battling a presumption, would go first when we came to that segment of their evidence in which they were presenting evidence. Yes. That would be within the discretion, under Rule 42B, of how a trial court manages its trials. Would it be prejudicial to go the other way around? Would it be prejudicial? No, it would not. It would certainly not be prejudicial enough to warrant a Rule 59 new trial. The order in which parties go should not be, this court should not find the order in which parties go rises to the level of creating an unfair trial. Inherent in any trial, somebody has to go first. It makes more sense, if you think about it, if you're doing segmentation, to have the party with the burden of proof go first. Now, Appellant is saying they're not challenging segmentation. They're not challenging that it was segmented into four segments. So the only challenge is that when the burden of proof is on the party who has to go, that that party goes first. It makes more sense to challenge segmentation if you're going to talk about prejudice. Well, I take it that what he's challenging is the sequence. He's saying you could segment the trial. You could even have separate juries. You could have time gaps between different segments of the trial. But you couldn't try the defense before you try the complaint. I think that's what he's really saying. That may be, Your Honor. I thought I heard him say that he did not object to the fact that the court wanted validity to go first. And my point only is, if that's the case, if there's no objection to that, then the only issue is if validity goes first, who does it make the most sense to be the first person to put their case on? And my point is, because there's a burden, it's our burden. It makes most sense for the party who has the burden to protrude. They have to build the case. So the party has to build the case and go first, so that the other party here, the attendee, can then file their motion for judgment as a matter of law and see if they even have to put a case on it. It's clearly the most efficient way to run a case at the trial court level. And there certainly was no prejudice to the court in doing so. The second main point that I take from the many, many issues listed in the appellant's papers is a challenge to the jury's verdict on validity. And it looks like from their brief that their second ground that they complain about is that the jury invalidated the patents. It was permitted to consider the issue. It shouldn't have even gone to the jury. And briefly, if I deny all that, I would note that if you read the way the brief is written, your honors, it essentially assumes that the court should decide this issue de novo on the merits. But of course, that's not the case here. There was a five-week jury trial. And the appropriate standard here is the reasonable jury standard. All disputes of fact should be assumed that the jury had found in favor of the defendants. And the question before the court is could any reasonable jury have found invalidity? And in this case, it's clear that that standard is met. In fact, in the other part of the brief, the appellant is arguing they're severely prejudiced because of the five days of testimony and evidence that came down to validity. And then they turn around and say, there wasn't even enough evidence for a reasonable juror to have found invalidity who would submit that standard is not met. Unless your honors have one final point. What is the standard in the First Circuit for clear error in a situation such as this? Do we use our law, or do we use First Circuit law to make a determination of prejudice? I'm sorry, for the waiver issue? Yes. I believe it's the law of the circuit. We put that in our briefs for objecting. And so it's just that you have to object at the district court level if you want to preserve an objection on appeal. And I don't know if you're going to the inconsistency argument that they've made as well. But in the inconsistency argument that they've made in their brief, the law of the First Circuit is that you must object after the verdict is read, but before the jury retires. And I believe that's the point. In the reply brief, where they say, well, unless there's some grave, plain error that is a matter of policy, you should ignore that. But that's only on the limited restart claims, right? Rather than the other claims, the testing claims? Right. If I just might answer to make it very clear for the record, Ethos does not, on this appeal, the appellant does not challenge the non-infringement verdict, as I read it, does not challenge the non-infringement verdict on the grounds that no reasonable jury could have found non-infringement. And specifically, on claim one of the 709 patents, there's no challenge whatsoever. On the 892 patent, which are the testing claims that you're referring to, Your Honor, the only challenge that's made is that it's inconsistent with the invalidity ruling. It's the only challenge. The infringement and invalidity are inconsistent. The infringement and the invalidity are inconsistent. That's their argument. But that's their only argument. They make no other challenge to the non-infringement. They don't say that no reasonable jury could have found non-infringement. And then finally, on- But you don't really address their argument on the limited restart claims. You only go to the testing claims as to the- The limited restart claims, I think you're referring to the accused product there being RDS. Yes. Right? I was going to get to that. On the limited restart claims, as I read their roots, and it's sort of unclear, but as I read their roots, their only challenge to that is to say that the judge's refusal to admit Exhibit H into evidence resulted in them not having a fair trial. Because combined with all the other things in the trial that already were in, it probably would have changed the jury's mind. But I do not see in their briefs a statement that no reasonable jury could have found that they failed to meet their burden by a fair preponderance, which is what the jury found. And they certainly don't articulate that standard or argue it, Your Honor. Well, we've given you a lot of extra time, sir. Thank you, Your Honor. Mr. O'Donnell? Thank you, Your Honor. We get focused by main argument and questions primarily in that one issue on the order of truth. There are many, many other issues in this case. But you can't get into them if you didn't argue in the first place. Well, we did argue. No, no, but on rebuttal here, you're limited to countering what he said. You can't bring up new topics. I understand that, Your Honor. I just want to remind you that my focus on that one issue does not mean that is the only issue. Nobody is suggesting that you've waived things by not arguing them. They're in your brief. They're countered in his brief. We have all the briefs. So we have dealt with them extensively. And in reference to exhibit H, which the counsel just mentioned, that was, in fact, a critical exhibit. And we did argue that with the court. The court refused to admit that exhibit into evidence because it was offered during the willfulness phase as opposed to the infringement phase. It was appropriate to offer it in the willfulness phase. It showed clear knowledge and clear recognition by real networks of their infringement. I didn't understand the trial judge to have said that it was irrelevant to the damages issues. Rather, the judge said it had to be offered the first time it was relevant, which would have been in the infringement phase. That's correct. And it wasn't offered then. And so he said it's too late. Your Honor. That's different from saying it's irrelevant. No, and I don't say he said it was irrelevant. In fact, he thought it was an admission of at least some elements of infringement in the claims. So it was very, very relevant. So where's the abuse of discretion in saying that if an exhibit is relevant to two issues, it has to be introduced when the first issue to which it's relevant is being litigated? Your Honor. How's that an abuse of discretion? It's only common sense. Your Honor, this was a document from real networks' own files. We don't have a witness. That doesn't respond to the point. You had it at the time of the infringement trial. You could have put it in. You didn't put it in. You put it in in a later phase. And the judge says, no, no, I'm not letting evidence come in in the later phase that was relevant to an earlier phase. And for a moment, Your Honor, what are we going to do to introduce it in the infringement phase? It's not our document. We don't have a witness that we can put up in the stand and take that person through. There were motions to try to get David Stewart, who was a recipient of that document, and who also appeared as co-trial counsel. Listen, if you had tried to admit it and they had tried to block you, you might have an argument. But when you didn't even try to get it admitted, it seemed like you don't have a good answer to the judge's complaint that you shouldn't have waited until the subsequent damages. Your Honor, we made a judgment that we thought was wholly appropriate to move its admission in the willfulness phase because it was clearly and directly pertinent to that phase. That was a legitimate, legitimate judgment. And to strike it out to refuse its admission, solely because it was not offered in the infringement phase, was an abuse of discretion. And further, the judge. Why would you say that? But it's not clear to me why one should gauge that to be an abuse of discretion. Why isn't that a proper discretion in order to have an orderly trial? If there are eight phases, and I have a document that's relevant to all eight phases, I should have to introduce that document in phase one and not wait until phase eight. That seems like a reasonable trial management rule. Your Honor, all I can say is, if that's the rule, how are you going to get the witnesses to introduce it? You try to structure the trial so it's reasonable and understandable to the jury. What are we going to do? Take this exhibit and say, now, here's an internal exhibit from real networks and the misinfringement. Who's going to be testifying? Me. We don't have all witnesses there to testify that. We tried to subpoena one of their witnesses, and they subpoenaed ours. It was a brouhaha. It turned out none of us got the persons we wanted. So what are we going to do? How are we going to offer that evidence? We offer it in a phase where it is appropriate, and we did have a witness, Mr. Rose, Attorney Rose, who based his opinion, he gave it to his outside counsel. What about prejudice? Suppose we agreed with you that it was an abuse of discretion to exclude it altogether. But if it wouldn't have mattered to the jury, then it doesn't seem like a sound basis for upsetting the judgment. Well, it would matter greatly, Your Honor, to see something like this with all the elements of the claim, a claim chart. Patent attorneys use these claim charts to say, yes, this element is there, and no, it isn't there. To see internally from real networks itself their own attorney saying, I think we've got a problem here. Not in those words, but by putting down the elements of RDS, Real Download Express, which he believed matched the elements of the claim, shows he knew there was a problem. So yes, it would have impacted the jury, and I think it could have impacted them substantially. The jury could have concluded real networks believe there was infringement. Why shouldn't we? Why isn't that enough evidence for us to take them at their own word when they have everything, every incentive to go the other way? It's a powerful admission. And by giving so much general willfulness, the judge kept that out. He also kept it out by just saying, well, it's in the wrong face. It was one of the most powerful exhibits in the entire trial. All right, we understand. We've given you both a lot of extra time, so we'll take the case under advisement. Thank you.